Submitted. And we will move on to our final argument for the day. Gulstan Silva v. City and County of Honolulu, case number 20-15381. And Mr. Seitz, if you're ready, you may proceed. Thank you. Thank you for the opportunity to be here before you today. An opinion filed on July 10th, 2018. A distinguished panel of this court ruled in a neurological refutal that if the facts were as the plaintiff alleged in his complaint, the defendant's multiple uses of force against Sheldon Hallett would violate both Fourth Amendment and established law. In that opinion, the panel cited and relied heavily upon three cases. Graham v. Connor, Brian v. McPherson, and Smith v. City of Emmett. After the Supreme Court denied certiorari, we proceeded to trial in this case in May 2019. And we established by clear and convincing, indeed overwhelming evidence, that Sheldon did not commit a serious offense. He was jaywalking. Sheldon was not a serious risk or harm to the officers or anyone else. He was unarmed and he made no attempts to strike, push, or otherwise use physical force. There's conflicting evidence. He's in the middle of the street. They can't get him out of the street. One officer testified that he struck a pose that seemed confrontational. I understand your view of the evidence, but there is another perspective on it. And that's not the standard of review we have to take with the judgment against you. I'm not sure we were allowed to indulge in your favor. Well, Judge, I appreciate that somebody testified that he struck a pose, but he never swung at anybody, never touched anybody. And that she did not believe at that point in time that he was about to hit her. Well, so I have a more fundamental, well, the most fundamental question is, is your position that the taser cannot be used unless there is an act of, you know, a threat of violence or a threat of some physical altercation? No, that's not my position. My position is based upon Graham versus Conner and all of the other additional cases we've cited, which says that you have to engage first of all in analyzing those three elements that Graham sets out. The third of which is whether the person is attempting to flee or run away. You weigh all of those elements to determine what the societal interest is in the use of force versus the necessity to use the least amount of force necessary. What was the least amount of force that the officers could have used in this circumstance where they could not get a hold of him and they felt like he was a threat to public safety? Judge Nelson, initially one officer, then two, then three responded to the scheme. Shortly thereafter, there were possibly 14 officers. They could easily have surrounded this man and used conventional force to bring him to the ground and restrain him. And that's what our expert testified that they should have done. Instead, what happened here is that within a minute of arriving on the scene, they resorted to intermediate force. And within four minutes thereafter, intermediate force had been applied as many as 14 times within four minutes. Like the case we cited to you where a man was tasered 10 times. That is unnecessary and excessive force. But most importantly in this case... But you got the chance to present that to the jury. That's the problem you have here, of course, is you have to say no one could ever find that it was anything, there's no other conclusion that could be found other than there was excessive force. You got a pretty heavy wind that's running against you when you have jurors that heard all the evidence and disagree. The problem is the jurors didn't hear all the evidence. And in two respects. First of all... Well that's a different set. Let me go back to the fundamental. That's a different set of arguments you've made. But I want to start with the concept. I didn't see anything cited in your brief and I'm not aware of any precedent that would support what you're asking for here. That is for us to reach back and say you should have won judgment as a matter of law despite the jury verdict to the contrary. Do you have any precedent that would support us doing that? No, and that's fundamentally not... That's a serious problem, isn't it? How can we disregard a jury? You can't disregard a jury, but the question is what did the jury hear or not hear and how was the jury... Well that's your other set of complaints and I want you to move to that, but keep in mind that your main argument just fails from the get-go unless you can prove there was something wrong with the trial. Because there is no Again, only as a preliminary overview, I ask you to look at what a Ninth Circuit panel previously decided and what the relevant facts are in this case. And then to look at what was importantly... I can assure you that Ninth Circuit panel was not saying if you can check off these boxes with some evidence, you're bound to win as a matter of law. That's not what our decision said. I understand. But most importantly what we stress in this case, and as the amicus brief I think convincingly argues, it was clear to the defendant officers from the outset that Sheldon was unable to comprehend or abide by their commands because he appeared to be suffering from either mental illness or the influence of drugs or both. All of the officers observed and acknowledged that Sheldon was impaired. They noted that in their reports and they testified accordingly. Yet their decisions to use force, in those decisions the officers failed and refused to recognize and account for the factor that the person whom they confronted was impaired. The Ninth Circuit has a standard jury instruction for civil rights cases where excessive force is argued. And in that standard instruction there is a provision for instructing the jury that they should take into account whether the victim or decedent in this case was impaired. Unfortunately... But does that... I understand that precedent. They need to take that into account. Sounds like the officers did. Where is it in the precedent that says if you believe he's impaired or if you believe he's suffering from a mental disability, or impairment I should say, that you are therefore prohibited from using intermediate force of a taser? It doesn't say you are prohibited. But it conditions the use of intermediate levels of force on a mental process which is described in great detail in Bryan v. McPherson. The mental process sounds exactly like a factual question that should have gone to the jury and did go to the jury. And the jury found that. Well unfortunately in this case the jury was not told that the impairment of the person they were confronting was a factor that they should consider in determining whether the force used... Suppose we agree with you on that point. They should have been instructed to consider mental condition. How is it prejudicial because it's obvious that there was a lot of testimony about his impaired state and what it created. So obviously that was taken into account. How would it have made a difference whether the instruction said drugs, mental illness or something else when the impairment as it manifests itself is what determines the reasonable response? That's why I have cited to you the recent decision of the 5th circuit which came out in November of this year in which the court decides at length the importance of taking into account that consideration. And we cited to you several other cases, the city of Hemet case being one of them, in which the process that police officers go through is one that requires them to use the least amount of force that would be necessary under the circumstances to constrain somebody who needs to be constrained. In this case they did not use the least amount. The problem is all of your arguments come back to a factual question. What's the least amount of force? What was in the head of the officers at the time? I don't understand how you win as a matter of law. These are objective tests, not subjective tests about what was in the officer's head. It is what the officer is required to consider and do. Bear in mind that these officers testified that when they used pepper spray, for example, they did not even realize they were using an intermediate level of force. That's what they testified to. They had no consideration that when they were facing somebody who was impaired that they could resort to the levels of force and the repeated levels of force that they did. But if you read the decisions of the cases that we cited to you most recently, the Fifth Circuit, all of the cases, the Crawford case is one that I would particularly urge upon you because in that case the instruction was given, the proper instruction, but the evidence was constrained. It was kind of the opposite of our situation. Here we were able to put on evidence that Mr. Halleck was impaired, but we were also not allowed to have our expert testify as to what that impairment meant for a reasonable officer. That evidence was precluded. So if you put together the evidence that was ruled out... Exactly what evidence are you referring to was precluded? Mr. Licton was being asked a series of questions about how a reasonable officer should respond to a situation where he or she faced an individual who was impaired. The judge refused to allow us to pursue those questions as to how a reasonable officer should act. And the justification that was given was that that was the ultimate question and therefore that question could not be asked but had to be given to the jury. The ultimate question here was whether excessive force was used. That was the question on the jury questionnaire on which the jury ruled. Whether or not a reasonable officer confronted by somebody who was impaired had to be taken into account in the choices of force that these officers used. That was a relevant question which we should have been able to explore and have opinions from our expert presented to the jury. And that was precluded. So coupled with the fact that the proper instructions were not given. We had a situation here where the jury went in with an instruction which basically said if there were essentially facts where the jury concluded that the force was necessary, that that was sufficient to decide whether or not it was excessive. And that's not the way the Supreme Court or any of the cases we've cited to you have suggested that these cases need to be looked at. And there are many cases by the Ninth Circuit including as I said Brian versus McPherson which suggests that the process that the officers have to go through and that the jurors have to be called upon to review is a much more complicated process. And that was not allowed. I have a small question about the record on the testimony of Dr. Van Dyken. What exactly are you complaining that she was not allowed to testify to? Because as I understand it she was able to say that she had extracted the two taser darts which was the main point of contradiction you wanted to get out. Am I right that she was able to testify to that? And what is it that she wasn't? I'd like to answer your question but I wanted to reserve a minute or two for rebuttal. Let me just answer your question. It's more complicated than that because yes she did testify that she removed the two darts. She went on to testify that she thought that had some impact on the cause of death but that was cut off and we don't object to that. But in closing argument, when I attempted to argue to the jury that the taser had an implication in what happened to Mr. Hallett and that Dr. Happy, who in his analysis and testimony said that he was not aware of the two darts having been removed by the surgeon, I was prevented from arguing that to the jury. So the testimony by Dr. Van Dyken I was not able to argue in my closing argument. And that's principally the objection we have in that regard. Thank you for that clarification. If I may, Could you reserve some time? Thank you. Okay, thank you counsel. Ms. Winter. Thank you. May it please the court, Nicolette Winter, Deputy Corporation Counsel, on behalf of Christopher Chung, Samantha Fishlow, and Steven Kardash. First, I'd like to address the point that the Ninth Circuit's prior decision in this case is just positive. There's plenty of evidence that was put forth in the trial in this case that was not before the court on summary judgment. That included the taser videos, which was Exhibit 24 in the trial showing that a bus was going by Mr. Hallett and the officers and that there were cars lined up behind it. There was the testimony of Sandy Apana, witness Sandy Apana and witness Chad Kumagai that was not part of the summary judgment motion. And, of course, the fact that it's considered in the light most favorable to plaintiff, not defendant, in the summary judgment. And the Ninth Circuit also said that in its opinion that no warnings were given, whereas the trial showed that there were multiple warnings that were given. Next, I'd like to address the jury instructions. I think the standard that holds, whether they are formulated so that they fairly and adequately cover the issues presented, directly state the law. Why wasn't it clearly wrong to strike the reference to mental illness from the pattern instruction in light of Drummond and Durrell? I don't know exactly how to pronounce that. Those cases suggest that if there's a basis in the record for thinking that mental illness was apparent as a problem to the officers and one of the officers testified to that, that that's something that must be considered. Wasn't that error to take that out of the instruction? I don't think it was error because the jury instruction that was proposed, which is whether it should have been apparent to the officers that the person that they used force against was emotionally disturbed, we believe is inapplicable or possibly even confusing the jury because, number one, the testimony given was that this was a controlled, this was not a controlled environment, that the officers had to control Mr. Howlett before they could do any sort of assessment on him and that, number two, the officers here did take mitigating efforts to first use officer presence, then verbal command, then trying to grab him, then trying to push him to the ground, verbal warning, pepper spray, which... I mean, those are all factors that are properly considered, but the district court took out of the instruction consideration of awareness of mental illness despite our case law saying that when there's a factual basis in the record for it, it must be considered. I think the judge was also correct in determining that there wasn't enough evidence presented because the limitation that was placed on Mr. Lipton was that... No, no, no. I'm talking about the officer. One of the officers said, the last one to arrive, said that the officer thought that he had a mental problem. That alone creates a basis, a factual basis that the other side can request instruction on that issue. Why was that not just a clear error? Well, and I think if that is the case, then I would think that any error would be harmless for... I don't concede that it is an error because I think that he could have asked questions about the parents, whether it was the parents and they didn't or they did and they didn't get the answers that they wanted. So there was nothing in terms of answers for counsel to point to, because if you look at the opening statements they gave, plaintiff argued that once officers knew or should have known that Sheldon was incapacitated, either because of the drugs in his system or because of other conditions, the evidence will show that they had a duty to aid and protect him, not to continue to harm him mercilessly out there on the street. And with respect to the such an argument in closing arguments, but wasn't unable to because evidence just wasn't presented on that issue. Mr. Lipton was asked a question about that, what, how, whether it was apparent that Mr. Halleck was emotionally disturbed or mentally ill. And the answer was frankly non-responsive. And, you know, for whatever reason, the questions weren't followed up on by counsel, but it was certainly, you know, the city would certainly contend that if this court were to find that it was error, then it would be harmless because of the fact that counsel was able to question Lipton and the officers extensively about what they knew or should have known and as to what was apparent. And the availability of alternative methods instruction was actually given, which is, which is somewhat broader than the instruction that was requested and denied. And this would just be an additional or tense factor to consider when the most important, of course, the most important factor would be whether they did impose an immediate threat to the safety of the officers or others. And the answers to the questions that they were asked on the subject was that the officers did try to do everything that they could try and that those things didn't work. So those are four reasons that, you know, even if this court were to find error, it would be harmless error. Can you address the excited delirium syndrome issue and whether that was properly admitted in that testimony? Yes, Your Honor. So there's plenty of evidence that the excited delirium syndrome is, is accepted by credible sources. You have the American College of Emergency Physicians that recognized it in a white paper where they came together and wrote this paper and came up with the factors that are supposed to be considered in determining whether there is excited delirium syndrome. And those are reliable authorities. The ASAP or American College of Emergency Physicians is the largest professional society of emergency physicians. And it was published in the Journal of Emergency Medicine. That's the journal that comes out of ASAP. And so, you know, they put in, they put forth a lot of evidence that, oh, well, you know, American Medical Association doesn't recognize that. But the only, the only evidence on the record there is that Dr. Hale testified that it is not true that the AMA does not recognize excited delirium syndrome. And, you know, they, they, they put forth not really evidence, but accusations that other professional societies don't recognize it. Well, whether it's unclear whether they recognize it or don't recognize it, but the point is that at least two credible sources recognize it and came up with criteria in which to determine whether it exists. Did the plaintiffs have the opportunity to rebut the, the scientific underpinnings of the, of the theory of the syndrome that was presented? You're asking a trial? Yeah. Oh, yeah. Yeah. I mean, that certainly could have been done in cross-examination with Dr. Hale and questions were extensively, extensively asked about excited delirium syndrome with Dr. Hale and Dr. Peters are experts in this case. And, and it was, was fully explored. And they, did they present an expert that said that excited delirium syndrome should not be recognized or did they, was the mode of attack simply to try and undermine the experts that the defense provided? I believe the mode of attack was primarily to just Dr. Lipton, who they named, and he is a police practices expert. So it was not qualified to testify as to, you know, whether excited delirium syndrome is accepted in the relevant community. So, so no, they, they did not put forth any evidence via expert on that, on that issue. And I just like to point out that there are several cases, you know, there, at least three cases and, or there were three cases cited by judge Gilmore that, that did not exclude excited delirium syndrome in the face of Dalbert challenge. And that's the state of Barnwell versus Rhone city. And last versus County of Orange and Gallup versus PTS of America, LLC, those three cases. And there were plenty of other cases that. Are any of those circuit court decisions? Yeah, those are circuit court decisions, but you also have ninth circuit cases, Marquez versus city of Phoenix and Gregory versus County of Maui that, which were ninth circuit, 2012 and ninth circuit, 2008, which didn't necessarily go through Dalbert challenge, but they did have testimony on excited delirium syndrome. The doctor listed the cause of death as excited delirium syndrome in Marquez versus city of Phoenix. And in, in opposition to a motion for summary analysis in this case, because the doctor did not list that as a cause of death. Does that, does that give the district court greater leeway to, I mean, if, if it's on the death certificate, it seems like that gives a lot stronger evidence that an expert should be able to weigh in on what that means. They hear there wasn't any, there wasn't anything suggestion that he died of the syndrome, right? Well, delirium was, I believe cited on the death certificate and you know, as, as it wasn't excited delirium syndrome, but as Dr. Hale testified, that's intellectually sound determination or to, you know, basically it's just terminology. And it could be that Dr. Happy didn't want to say excited delirium syndrome because he doesn't like that term, but he did use delirium and he used other terms that are consistent with the syndrome and others, I guess the symptoms are terms that are consistent with excited delirium syndrome. I'd like to briefly address the argument made that, that plaintiff's counsel made with respect to Dr. Happy and closing argument. Plaintiff's counsel is trying to say that because Dr. Happy didn't have evidence that the probes struck Halek, that is why he determined that he wasn't tased. But that is improper because counsel never asked Dr. Happy about that. And so, and that in fact is not why Dr. Happy determined that the taser played no part in Halek's death. You have number one, Dr. Happy determined, you know, excuse me, Dr. Happy examined Halek's body and was aware of the distinctiveness of the taser marks when they puncture the skin fully and are removed. And number two, Dr. Happy examined the taser video and can see that Halek never experienced neuromuscular incapacitation. So opposing counsel could have questioned Dr. Happy about that if he wanted to in closing argument, but he did not. And by the way, the court didn't strike that testimony in closing argument. She just let it go. So that's, we believe clearly not a reason for error. And with respect to reasonableness, we would contend that the case law certainly covers that and says that, you know, even though expert testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of facts. That said, an expert witness cannot give an opinion as to her legal conclusion, i.e. an opinion on the ultimate issue of law. So for the expert to want to come out and say everything, couch everything in terms of reasonableness, that is not consistent with the law. And unless you have any further questions, that's all I have. Okay. Thank you, counsel. Mr. Seitz, we'll give you a couple of minutes for rebuttal. Thank you. First of all, I want to respond to the last point. And I want to again cite to you both the Crawford and the Martin cases in which if you look at those, you'll see that the experts brought by plaintiff were allowed to testify as to what reasonable officers should do under the circumstances in those cases, including in Crawford, the circumstance where the officers were confronted with somebody. Hold on. I thought that they were allowed, your witnesses were allowed to testify what a reasonable officer would do. What they were prohibited from doing was testifying to what these officers at the scene actually knew. Am I incorrect about that? You are incorrect, Judge. What I was told that during the course of the examination was that my witness, Mr. Licton, could only testify as to what national standards might be. Well, yeah. I think that proves my point. Well, he wanted to testify as to what a reasonable officer in that circumstance should do and how a reasonable officer should take into account, among other things, the obvious signs of mental illness. Well, then that's exactly the problem. Okay. With all due respect, I think you've just proven the very question I asked, but go ahead. Now, lastly, I want to call your attention, Judge Collins, first of all, to our Exhibit 11, which was the use of force report. It's in the record by Officer Kardash in which he checked mentally deranged and he also checked suspected drug use. This is the form he filled out immediately after the incident, which is consistent with his testimony. Similarly, Judge Critchlow in Exhibit 7 testified that the person appeared to be high on drugs. Officer Chung also made comments that he appeared to be on some kind of drug. So, all of these officers knew from the moment they arrived, from their initial observations, that there was an issue of impairment here. And we believe, as a matter of law, that the trial judge was obligated then to give the Ninth Circuit instruction, which included the consideration by the officers in the use of force as to how they were dealing with somebody who was impaired. And that is most fundamentally what we contend that was the error in this case. Thank you, counsel. Thank you both for your arguments in a complicated case. That case is now submitted.
judges: Clifton, Nelson, Collins